UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES CECCHINATO,<br>      Plaintiff,<br><br>v.<br><br>THE TOWN OF SHEFFIELD, BRENNAN<br>POLIDORO, individually and in his official<br>Capacity, BRIAN SHAW, individually and<br>in his official capacity, ERIC MUNSON,<br>individually and in his official capacity,<br>      Defendants. | )<br>)<br>)<br>)   Civil Case No. 3:19-30076-KAR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
TO AMEND COMPLAINT
(Dkt. No. 38)

ROBERTSON, U.S.M.J.

This matter is before the court on the motion by plaintiff James Cecchinato ("Plaintiff") for leave to amend his complaint ("Plaintiff's Motion") (Dkt. No. 38).  The defendants, who, if this motion is granted will include the Town of Sheffield ("the Town"), Brennan Polidoro ("Polidoro"), and Eric Munson ("Munson") (collectively, "Defendants"), assent to so much of the motion as removes all claims against Brian Shaw, the claim for violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, and the *Monell* and the failure to supervise claims against the Town (Dkt. No. 39 at 3).  Defendants oppose so much of Plaintiff's Motion as seeks to add a negligence clam against the Town and claims under 42 U.S.C. § 1983 against Eric Munson (Dkt. No. 38).  The court heard argument from the parties on October 6, 2020, and for the reasons set forth below, grants Plaintiffs' Motion in part and denies it in part.

      I.      BACKGROUND

Plaintiff filed this action on June 3, 2019 (Dkt. No. 1).  The attorneys now representing Plaintiff entered an appearance on or around February 12, 2020 (Dkt. Nos. 32-33).  On February

1

27, 2020, the court entered a revised scheduling order, that, insofar as pertinent here, ordered that motions for leave to amend the pleadings be filed by July 24, 2020 (Dkt. No. 37).

In Plaintiff's proposed First Amended Complaint ("FAC"), he alleges that, on June 6, 2016, he was driving a gray 1997 Honda Accord with Connecticut plate 443EFD through the Town when Polidoro activated the emergency lights in his cruiser (FAC, Dkt. No. 38-1 at ¶¶ 13-14). Plaintiff pulled over to the side of road. Polidoro stopped his cruiser behind the Honda Accord, exited the cruiser, and, shielding himself behind the door of the cruiser, pointed his service weapon in Plaintiff's direction (FAC ¶¶ 15-17). Munson arrived on the scene in a second cruiser, exited the vehicle, and pointed his service weapon at Plaintiff (FAC ¶ 18). Polidoro ordered Plaintiff out of the vehicle. Plaintiff complied and Polidoro ordered him to lie on the ground. The officers continued to point their service weapons at Plaintiff. Once Plaintiff was on the ground, Polidoro approached him and told him to put his face on the pavement. When Plaintiff hesitated, Polidoro forced Plaintiff's face onto the pavement (FAC ¶¶ 19-23). Polidoro cuffed Plaintiff's hands behind his back, then ordered Plaintiff to stand up (FAC ¶¶ 24-25). Because of the position he was in, Plaintiff could not get up quickly. Polidoro yanked him to his feet, pulling him up by his left elbow, and placed Plaintiff in the rear of the cruiser (FAC ¶¶ 26-29). Polidoro and Munson then searched Plaintiff's car. Having found nothing indicating criminal activity, they released Plaintiff (FAC ¶¶ 30-31). Plaintiff's injuries from the encounter required arthroscopic surgery for a rotator cuff repair (FAC ¶¶ 32-27).

Based on these allegations, Plaintiff asserts Fourth Amendment claims under 42 U.S.C. § 1983 against Polidoro and Munson for a warrantless search and seizure and for excessive use of force (Count I); false imprisonment against Polidoro (Count II); intentional infliction of

emotional distress against Polidoro (Count III); assault and battery against Polidoro (Count IV); and negligence against the Town (Count V).

    II.    DISCUSSION

    1.  Standard of Review

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. A plaintiff is permitted to amend a complaint once as a matter of right prior to the filing of a responsive pleading by the defendant. Fed. R. Civ. P. 15(a). Thereafter, the permission of the court or the consent of the opposing party is required. The default rule mandates that leave to amend is to be "freely given when justice so requires," *id.*, unless the amendment "would be futile, or reward, *inter alia,* undue or intended delay." *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994).
>
> As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments (as was . . . the case here). Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-155 (1st Cir. 2004). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party opponent. *Id.*

*Steir v. Girl Scouts of the USA,* 383 F.3d 7, 11-12 (2004) (footnotes omitted); *see also Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013). "Amendment of pleadings is largely a matter within the discretion of the district court." *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010) (citing *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir. 1970)). "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). When evaluating a motion to dismiss, the court assumes the truth of the well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See, e.g., The Hilsinger Co. v. Kleen*

*Concepts, LLC*, 164 F. Supp. 3d 195, 199 (D. Mass. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007); *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)).

The court initially set a May 29, 2020 deadline for completion of non-expert discovery (Dkt. No. 22). In late February 2020, following a change in Plaintiff's counsel, the court extended the deadline for completion of non-expert discovery to September 30, 2020 (Dkt. No. 37). As of September 17, 2020, the parties had not taken depositions (Dkt. No. 39 at 2). At the hearing on Plaintiff's Motion, at the joint request of the parties, the court extended the deadline for completion of non-expert discovery to December 31, 2020. No deadline has been set for the filing of dispositive motions (Dkt. No. 41). Plaintiff's Motion was filed on September 3, 2020 (Dkt. No. 38). Plaintiff's counsel has explained that he did not meet the July 24, 2020 deadline for filing Plaintiff's Motion because he was seeking Defendants' assent to the motion and because he did not receive defendants' interrogatory answers prior to the July 24, 2020 deadline (Dkt. No. 38 at 3 n.7). "[G]iven the totality of the circumstances[, the status of non-expert discovery, and the modest delay beyond the deadline set in the court's scheduling order], the court reviews [Plaintiff's Motion] for leave to amend pursuant to the standards governed by Rule 15(a)." *Elliott-Lewis v. Abbott Labs., Inc.*, Civil Action No. 14-cv-13155-IT, 2017 WL 1826627, at *2 (D. Mass. May 5, 2017).

The court turns briefly to the question of which documents are properly before it as it rules on Plaintiff's Motion. Defendant argues that, in assessing the sufficiency of the FAC, the court should rely on factual information in the parties' written discovery responses, including Plaintiff's answers to the defendants' first set of interrogatories, Munson's answers to Plaintiff's first interrogatories, Polidoro's answers to Plaintiff's first interrogatories, and a Sheffield Police

4

Department Traffic Enforcement policy. These documents are attached as exhibits to the defendants' opposition to Plaintiff's Motion and relied upon by the defendants in support of their contentions that Plaintiff's proposed amendments to his initial complaint are futile (Dkt. Nos. 39, 39-1 to 39-4). When applying the Rule 12(b)(6) standards governing a motion to dismiss, however, "a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto, *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993), or else convert the motion into one for summary judgment. *Id.*; Fed. R. Civ. P. 12(d)." *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013). The narrow exception to this general rule does not encompass answers to interrogatories or documents such as the police department policy submitted by the defendants. *See id.* at 36 (a court may consider official public records, documents central to a plaintiff's claims, and documents sufficiently referred to in the complaint without converting the motion to dismiss to one for summary judgment). When a motion to amend a complaint "is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint." *Steir*, 383 F.3d at 12 (quoting *Resolution Tr. Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)). The defendants have not moved for summary judgment in the instant case. The defendants' proposal would require the court to accept the parties' written discovery responses at face value before those responses have been tested, clarified by examination, or placed in context at deposition. The defendants have not pointed to any authority supporting a defendant's right to rely on extrinsic evidence to oppose a motion to amend a complaint being judged under a Rule 12(b)(6) standard and the court is aware of none. For these reasons, the court will consider whether the FAC states claims of negligence against the Town and Fourth Amendment violations against Munson solely by reference to the well-pleaded allegations in the FAC and the presentment letter

5

which is attached thereto and, therefore, incorporated into the FAC by reference. *See, e.g., The Hilsinger Co.*, 164 F. Supp. 3d at 199.

    2. Futility

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman*, 90 F.3d at 623; *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("a proposed amendment is futile only if it could not withstand a 12(b)(6) motion to dismiss"). Thus, where the question of futility is raised in opposition to a motion for leave to amend a complaint, the proposed amended complaint must satisfy the Rule 12(b)(6) standard.

    a.  Neligence Claim – Count V

Plaintiff alleges that Polidoro and Munson owed a duty of reasonable case in the performance of their duties as police officers and that the Town is liable for their failure to comply with this duty (Compl. ¶¶ 60-61). The Town contends that so much of the FAC as seeks to assert the negligence claim in Count V is futile because the "proposed allegations appear to stray from the notice provided to the Town in the predecessor counsel's purported presentment letter," (Dkt. No. 39 at 10), and because the allegations in the FAC assert intentional rather than negligent conduct (Dkt. No 39 at 11).

"Pursuant to the Massachusetts Tort Claims Act ("MTCA"), public employers cannot be held liable for the intentional torts of their employees." *Cordero v. Pack*, 368 F. Supp. 3d 137, 150 (D. Mass. 2019) (citing Mass. Gen. Laws ch. 258, §§ 2, 10(c)). To the extent the FAC might be read to assert a claim against the Town based on the intentional torts of false imprisonment, intentional infliction of emotional distress, or assault and battery allegedly committed by Polidoro or excessive use of force by Polidoro or Munson, such claims are barred by the MTCA.

*See id.* It is, however, possible to read the FAC as asserting that, when Polidoro "yanked" Plaintiff up from the ground by his elbow, allegedly caused Plaintiff serious injuries, Polidoro's treatment of Plaintiff was negligent rather than intentional. There may be other actions taken by responding officers, such as, for example, failing accurately to ascertain the status of the car Plaintiff was driving, that could be found to be negligent. A police officer in Massachusetts is entitled to use such force as is necessary and reasonable in the performance of his or her duties. *See Commonwealth v. Asher*, 31 N.E.3d 1055, 1062 (Mass. 2015). The allegation that a police officer acted negligently in his physical interaction with an individual states a cognizable claim against a municipality that is not barred by the MTCA. *See Lachance v. Town of Charlton*, 368 F. Supp. 3d 231, 245-46 (D. Mass. 2019), *appeal docketed,* No. 20-1103 (D. Mass. filed Jan. 29, 2020); *Gross v. Bohn*, 782 F. Supp. 173, 186 (D. Mass. 1991). "Fed. R. Civ. P. 8(d) … permits [p]laintiffs to plead alternative and even inconsistent legal theories such as [intentional and negligent conduct], even if [p]laintiffs can only recover under one of those theories." *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009) (citing *Limone v. United States*, 579 F.3d 79, 93 (1st Cir. 2009); *Barrett v. H & R Block, Inc.*, 652 F. Supp. 2d 104, 112 (D. Mass. 2009); *Zamzam Telecard, Inc. v. N.J.'s Best Phonecards*, 514 F. Supp. 136, 139 (D. Mass. 2007)); *see also Fine v. The Guardian Life Ins. Co. of Am.*, 450 F. Supp. 3d 20, 35 (D. Mass. 2020) (citing cases). Plaintiff cannot recover for excessive use of force or an intentional tort committed by the individual defendants *and* from the Town for negligence, but, at least at this stage of the case, Plaintiff may assert negligence as an alternative basis for recovery from the Town.

As to the contention that the allegations in the FAC "appear to stray from the notice provided to the Town in the predecessor counsel's purported presentment letter" (Dkt. No. 39 at

7

10), the Massachusetts Supreme Judicial Court has rejected the contention that a "presentment letter must identify each legal claim or suffer dismissal of any omitted claim." *Magliacane v. City of Gardner*, 138 N.E.3d 347, 358 (Mass. 2020).  "[A] presentment letter 'is adequate if it sets forth sufficient facts from which public officials reasonably can discern the legal basis of the claim, and determine whether it states a claim for which damages may be recoverable under the act.'"  *Id.* at 359 (quoting *Murray v. Hudson*, 34 N.E.3d 728, 735 (2015)).  The presentment letter set out the facts of Plaintiff's encounter with members of the Sheffield police force as Plaintiff remembered those events at the time.  In addition to asserting that if Polidoro had been properly trained and supervised, the encounter could have been resolved without physical injury to Plaintiff, the presentment letter asserted generally that Polidoro had been "negligent [in his] handling of the situation."  The letter further advised the Town that Plaintiff would assert negligence and civil rights claims against the Town and Polidoro (Dkt. No. 38-2 at 3).  "[T]he presentment letter provided the [T]own with adequate notice of the circumstances of … [P]laintiff's negligence claim – without limitation to any specific theory of negligence – and … the [T]own reasonably could investigate those circumstances and determine whether the [T]own might be liable on the claim under the act."  *Murray*, 34 N.E.3d at 736.

      b.  Fourth Amendment Claims Against Munson – Count I

Fairly read, the FAC, including the presentment letter, which is attached thereto and incorporated therein by reference, *see Watterson*, 987 F.2d at 3, alleges that Polidoro stopped Plaintiff based on information that the vehicle Plaintiff was driving was stolen (FAC ¶¶ 12, 14-17; Dkt. No. 38-2 at 2).  Polidoro exited the cruiser he was driving, shielded himself behind his cruiser door, and pointed his service weapon at Plaintiff.  Munson subsequently arrived on the scene, exited the cruiser he was driving, and pointed his service weapon at Plaintiff while

Polidoro told Plaintiff to get out of his vehicle, then told him to get on the ground (FAC ¶¶ 17-20). Plaintiff does not allege that Munson continued to point his service weapon at Plaintiff after Plaintiff was on the ground. Plaintiff alleges that the time he was in custody, including the time spent on the search of his vehicle, which was conducted jointly by Polidoro and Munson, lasted approximately ten to fifteen minutes (FAC ¶¶ 30-31).

Based on these allegations, Plaintiff seeks to add claims of excessive use of force and warrantless search and seizure in violation of his Fourth Amendment rights against Munson (FAC ¶¶ 39-43). Defendants oppose the addition of these claims against Munson on grounds of futility. Having reviewed the case law cited by the parties, the court agrees with Defendants that the addition of Fourth Amendment claims against Munson would be futile.

"'A Fourth Amendment seizure occurs when a police officer has in some way restrained the liberty of a citizen through physical force or show of authority.'" *Stamps v. Town of Framingham*, 813 F.3d 27, 35 (1st Cir. 2016) (quoting *United States v. Camacho*, 661 F.3d 718, 725 (1st Cir. 2011)). There can be no dispute that Plaintiff was seized when Polidoro and Munson restrained his liberty by pointing their service weapons at him in a show of their authority. *See, e.g., id.* at 35 (the display of a weapon by an officer is an example of a circumstance that might indicate a seizure) (citing *United States v. Mendenhall*, 446 U.S. 544, 554)). "The Fourth Amendment's protection against unreasonable seizures prohibits officers from 'exceed[ing] the bounds of reasonable force in effecting an arrest or an investigatory stop.'" *Morse v. Commonwealth of Mass. Exec. Office of Pub. Safety Dep't of State Police*, 123 F. Supp. 3d 179, 192-93 (D. Mass. 2015) (quoting *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010)). "To demonstrate a violation based on excessive force, 'a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances[,]'" *id.* at 193 (quoting

*Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007)), an inquiry which requires balancing "the individual's interest against the government's, weighing three non-exclusive factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Raiche*, 623 F.3d at 36 (internal quotations and alterations omitted).

In support of the addition of this claim against Munson, Plaintiff relies on *Stamps*, a case in which the First Circuit affirmed the trial court's ruling that a police officer used unreasonable force when he entered an apartment with his weapon drawn, pointed the weapon at the head of a man who was prostrate on the floor with his hands raised near his head, disengaged the safety, set the weapon at semi-automatic, and placed his finger on the trigger. *Stamps*, 813 F.3d at 31. In the *Stamps* case, the officer accidentally fired his weapon, killing Eurie Stamps, a man whom the officers expected to be present in the apartment, and whom they knew was not suspected of being involved in illegal activity. In affirming the district court's conclusion that the officer had used excessive force, the First Circuit focused on the reasonableness of the steps taken by the officer before he accidentally pulled the trigger. *Id.* at 30-31. Plaintiff also points to *Mlodzinski v. Lewis*, 648 F.3d 24 (1st Cir. 2011), in which the First Circuit held that police officers used excessive force when they pointed firearms at the head of a fifteen-year-old girl, who was lying handcuffed on the floor, for some seven to ten minutes, *id.* at 37-38, and *Green v. City & County of San Francisco*, 751 F.3d 1039 (9th Cir. 2014). In *Green*, the Ninth Circuit held that there was a jury question as to whether police officers used excessive force when police officers arrested a woman driving her own car on the unfounded suspicion that it had been stolen. Reversing the trial court's grant of summary judgment, the court noted the presence of as many as six officers on the scene, pointing drawn weapons at a woman who was, for part of the time that the weapons

were pointed at her, handcuffed and kneeling on the ground. *Id.* at 1048. The court rejected the argument that "the existence of a stolen vehicle, in and of itself, [was] enough to satisfy the degree of force used." *Id.* For their part, the defendants argue that, in each of the cases cited by Plaintiff, the target of force was either known to be innocent or was in a position in which police officers were able to see that the target posed no risk to the officers (Dkt. No. 39 at 7). In the court's view, the defendants have the better of the arguments here.

Granting that these are highly fact specific cases and that Plaintiff's Motion is being judged under the permissive Rule 12(b)(6) standard, Plaintiff has not sufficiently alleged that Munson used excessive force when he responded to a call for backup in a situation involving a car believed to be stolen, then pointed his service weapon at Plaintiff until Plaintiff was in a position in which he could pose no threat to the officers. Plaintiff alleges that Munson was one of two officers who pointed their service weapons at him while he was in a vehicle where he could not be fully observed, as he got out of the vehicle, and while he lowered himself to the ground (FAC ¶¶ 18-20). Plaintiff does not allege that Munson pointed a gun at his head with the safety off, continued to point the gun at Plaintiff after Plaintiff was on the ground, or, given that Plaintiff alleges that he was in custody for a total of ten to fifteen minutes (FAC ¶ 31), that Munson pointed the weapon at him for more than the brief time it took to ensure that Plaintiff posed no threat. Because Plaintiff does not remember Munson pointing a firearm at him (Dkt. No. 38 at 8), it is unlikely that new facts unfavorable to Munson will emerge in discovery.

Munson was faced with a report of a stolen vehicle, a felony under Massachusetts law. *See* Mass. Gen. Laws ch. 266, § 28(a). The driver's identity was unknown when Polidoro stopped the car and the officers first engaged with Plaintiff. "[T]he law clearly allows a police officer to draw his weapon when stopping a stolen car." *Tinch v. United States*, 189 F. Supp. 2d

11

313, 319 (D. Md. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989); *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988)); *see also Henry v. Storey*, 658 F.3d 1235, 1239 (10th Cir. 2011) (a police officer who had probable cause to believe he was stopping a stolen vehicle would not violate the driver's Fourth Amendment rights by pointing his gun at the driver; the officer "could reasonably conclude that the driver posed an immediate threat to the safety of the officers and the public – a driver caught with a stolen vehicle has strong incentive to evade arrest, given the seriousness of the crime"). While they are not directly on point, cases in the First Circuit judging the reasonableness of officers' actions in similar situations generally appear in accord. *See Schubert v. City of Springfield*, 589 F.3d 496, 503 (1st Cir. 2009) (a police officer who observed a man carrying a firearm was entitled to take action, including drawing his gun, to ensure his own safety); *Flowers v. Fiore*, 359 F.3d 24, 30 (1st Cir. 2004) (it was reasonable for officers to stop a vehicle with their weapons drawn when they acted on a report of an armed threat).

Although the FAC alleges a Fourth Amendment violation based on a warrantless search and seizure, Plaintiff does not separately contend in his motion that Munson did not have probable cause to participate in Polidoro's stop of Plaintiff or that the officers lacked justification for a brief search of a car the officers had probable cause to believe was stolen (Dkt. No. 38). The automobile exception to the Fourth Amendment's warrant requirement authorizes officers to search a vehicle without a warrant if there is probable cause to believe that the vehicle contained evidence of a crime when it was stopped. *See, e.g., United States v. Cruz-Mercedes*, 379 F. Supp. 3d 24, 37 (D. Mass. 2019). There are likely to be documents in a vehicle, such as a car registration, showing the identity of the vehicle's owner(s). Had the car Plaintiff was driving been stolen, such documents likely would have been relevant to any charges he might have faced

following the stop. Alternatively, had the officers had a basis for detaining Plaintiff, they would have had to impound the car and would have been entitled to conduct an inventory search. *See id.* As the defendants contend, there is no basis for a Fourth Amendment claim based on a warrantless search and seizure against Munson.

For the foregoing reasons, so much of Plaintiff's Motion as seeks to add claims against Munson pursuant to 42 U.S.C. § 1983 is denied on grounds of futility.

### III. CONCLUSION

Plaintiff's Motion (Dkt. No. 38) is GRANTED in part and DENIED in part. Plaintiff may file an amended complaint conforming with this decision by no later than January 8, 2021, indicating in the caption the date on which the court authorized the filing of the amended pleading.

It is so ordered.

Katherine A. Robertson<br>KATHERINE A. ROBERTSON<br>U.S. MAGISTRATE JUDGE